## FORTSON, SECRETARY OF STATE OF GEORGIA, ET AL. *v.* TOOMBS ET AL.

No. 300. . Argued November 18–19, 1964.—Decided January 18, 1965.

*E. Freeman Leverett,* Deputy Assistant Attorney General of Georgia, argued the cause for appellants. With him on the brief was *Eugene Cook,* Attorney General of Georgia.

*Francis Shackelford* argued the cause for appellees. With him on the brief were *Emmet J. Bondurant II, J. Quentin Davidson, Edward S. White* and *Hamilton Lokey.*

PER CURIAM.

The District Court, having held that the Georgia Legislature was malapportioned (*Toombs* v. *Fortson,* 205 F. Supp. 248), enjoined appellants, election officials, "from placing on the ballot to be used in the General Election to be held on November 3, 1964, or at any subsequent election until the General Assembly is reapportioned in accordance with constitutional standards, the question whether a constitutional amendment purporting to amend the present state constitution by substituting an entirely

new constitution therefor shall be adopted."* Appellants challenge that provision on the merits. Appellees, while defending it on the merits, suggest alternatively that the issue has become moot.

The situation has changed somewhat since the 1964 election, as both the Senate and the House have new members, and appellees, for whose benefit the challenged provision was added, say it is now highly speculative as to what the 1965 legislature will do and suggest the paragraph in question be vacated as moot.

We vacate this part of the decree and remand to the District Court, to whom we give a wide range in moulding a decree (*United States* v. *Crescent Amusement Co.,* 323 U. S. 173, 185; *International Boxing Club* v. *United States,* 358 U. S. 242, 253), for reconsideration of the desirability and need for the on-going injunction in light of the results of the 1964 election and the representations of appellees.

*It is so ordered.*

---

*The entire paragraph reads as follows:

"The defendants are hereby enjoined from placing on the ballot to be used in the General Election to be held on November 3, 1964, or at any subsequent election until the General Assembly is reapportioned in accordance with constitutional standards, the question whether a constitutional amendment purporting to amend the present state constitution by substituting an entirely new constitution therefor shall be adopted; provided, however, nothing in this order shall prevent the submission of amendments to the Constitution of the State of Georgia which are separate as to subject matter, in accordance with Article XIII, Section I, Article 1, of the Constitution of the State of Georgia, 1945. (See *Hammond* v. *Clarke,* 136 Ga. 313, for a discussion by the Georgia Supreme Court of what constitutes separate amendments). Nor shall anything in this order prevent the calling by the General Assembly of a 'convention of the people to revise, amend or change the constitution' if the representation 'in the convention is based on population as near as practicable' with the members being elected by the people (see Article XIII, Section I, Article 2). Constitution of the State of Georgia, 1945."

MR. JUSTICE CLARK, concurring.

Although I would prefer to declare this litigation moot and vacate the judgment below, I am joining the opinion and judgment of the Court solely on the basis that it is not reaching the merits regarding the propriety of the order fashioned by the three-judge District Court. In my view, the Court is simply vacating and remanding in order to give the District Court an opportunity to reconsider its order in light of the change in circumstances which has occurred since judgment was entered.

MR. JUSTICE HARLAN, with whom MR. JUSTICE STEWART joins, concurring in part and dissenting in part.

This is the first time that the Court, after plenary briefing and argument, has been called on to consider the propriety of interim arrangements prescribed by a district court pending the effectuation of its decision requiring reapportionment of a branch of a state legislature.

After holding that the House of Representatives of the General Assembly of Georgia was unconstitutionally composed, a decision which is not called into question on this appeal, the three-judge District Court ordered: (1) that the election in 1964 of the legislature to serve in 1965 (the 1965 legislature) might proceed under the State's existing methods of apportionment; (2) that until a properly apportioned legislature took office no other legislature could propose to the electorate, except through the calling of a convention of popularly elected delegates, the adoption of a new state constitution; and (3) that (except for reapportionment legislation) the 1965 House should be "limited," notwithstanding any provision of state law, "to the enactment of such legislation as shall properly come before the said Legislature during the regular 1965 45-day session" provided by Georgia law. After the State's appeal was filed in this Court this last

provision was in effect abrogated by the District Court with the approval of the parties.[1]

This appeal draws in question the validity of items (2) and (3) above, similarly numbered in the District Court's order. It is contended by the appellees, however, that both these issues have now become moot.

## I.

The Court's disposition of this case, of course, involves a holding that at least as to item (2) the case is *not* moot. For, contrary to what my Brother GOLDBERG says in his dissenting opinion (*post,* pp. 636–638) and as my Brother CLARK seems to recognize (*ante*), the Court does not remand the case to the District Court for a determination on the issue of mootness, but only to decide whether any injunctive relief is now appropriate in light of what has transpired since such relief was first granted.

While it may be that the Court's implicit holding on mootness does not reach beyond the portion of the District Court's decree that goes to the submission of a proposed new state constitution (par. (2) of the decree), I would also hold not moot the pronouncement of that decree placing limitations on the functioning of the 1965 State Legislature (original par. (3) of the decree).

As to paragraph (2), it is sufficient to say that the injunction has continuing effect, not only with respect to the 1965 legislature, but also as to any successor legislature if it is found to be "malapportioned." Any alleged "speculativeness" as to whether a new state constitution may be proposed to the electorate before a "constitutional" legislature comes into being, goes not to mootness but only to the question whether the District Court (assuming its power in the premises, see below) should

---

[1] The full text of the District Court's order and the amendment of item 3 are printed in the dissenting opinion of MR. JUSTICE GOLDBERG as Appendices A and B, respectively. *Post,* pp. 639, 641.

have granted any relief on this score.[2] So far as original paragraph (3) of the decree is concerned (limiting the activities of the 1965 legislature) it was not rendered moot by the District Court's modification after the case had been taken for review by this Court. Analytically, the situation is tantamount to a confession of error at this level, at most relieving this Court of the necessity of making a definitive exposition of its views on this subject (compare the suggestion of my Brother GOLDBERG, *post*, pp. 638–639), but not depriving the question of the attribute of justiciability. Cf. *Young* v. *United States,* 315 U. S. 257, 258–259.

The position adopted by the Court is that although the case is not moot, at least as to the "constitution-submission" issue, decision of that question could be avoided if the District Court chose to vacate that part of its injunction in light of the change in circumstance which has made the need for such relief speculative; the Court therefore remands the case to afford the District Court that opportunity. I do not think that such avoidance as to either question is called for in this case. The Court's reapportionment decisions have pressed district courts onto an uncharted and highly sensitive field of federal-state relations with little more to guide them than the elusive "one-person-one-vote" aphorism. District courts, as courts of first instance, must necessarily fashion remedies for themselves, and the passage of time and the variety of remedies chosen by them may ultimately help this Court to wend its way through this treacherous constitutional terrain. But it is essential that the lower courts at least be launched in the right general direction and not allowed to range so far afield as to hamstring state legislatures and deprive States of effective

---

[2] See *Labor Board* v. *Pennsylvania Greyhound Lines, Inc.*, 303 U. S. 261, 271; *Southern Pac. Terminal Co.* v. *Interstate Commerce Comm'n,* 219 U. S. 498, 514–515.

legislative government. Paragraphs (2) and (3) of the injunction involved in this case do range that far afield. Absent disapproval by this Court, the decision below, rendered by a distinguished panel, cannot fail to furnish a strong practical, if not legal, precedent for other district courts. I do not think this should be allowed to happen.

## II.

I would hold the decree below improvident in both the aspects before us.

As to the provision forbidding submission to the electorate of a legislatively proposed new state constitution, I can find nothing in the Fourteenth Amendment, elsewhere in the Constitution, or in any decision of this Court which requires a State to *initiate* complete or partial constitutional change only by some method in which every voice in the voting population is given an opportunity to express itself. Can there be the slightest constitutional doubt that a State may lodge the power to initiate constitutional changes in any select body it pleases, such as a committee of the legislature, a group of constitutional lawyers, or even a "malapportioned" legislature—particularly one whose composition was considered, prior to this Court's reapportionment pronouncements of June 15, 1964, to be entirely and solely a matter of state concern? [3]

Similarly as to the provision of the lower court's original decree limiting the functions of the 1965 legislature, it seems scarcely open to serious doubt that so long as the federal courts allow this Georgia Legislature to sit, it must be regarded as the *de facto* legislature of the State, possessing the full panoply of legislative powers accorded by Georgia law.

---

[3] If, as I believe, a State is not federally restricted in its choice of means for initiating constitutional change, the question of whether, under Georgia law, the proposed new Georgia Constitution should have been initiated by a popularly elected convention instead of by the legislature is not a matter for federal cognizance.

I think that the State of Georgia is entitled to a clear-cut pronouncement from this Court that nothing in its reapportionment decisions contemplated such unheard-of federal court intrusion into state political affairs as the decree before us evinces. Beyond that, for this Court to temporize with important interstitial matters of this kind, deeply affecting the even course of federal-state relations, can only serve to aggravate the confusion which last June's reapportionment cases have left in their wake.[4]

I would modify the decree below by striking therefrom paragraph (2) and approving the substitute for original paragraph (3) as framed by the District Court.

Mr. Justice Goldberg, dissenting.

I dissent from the Court's disposition of this case. By remanding, the Court is, in effect, asking the District Court to decide whether this appeal, which is pending before us and with respect to which we noted probable jurisdiction and heard argument, should be dismissed as moot due to events occurring after the appeal had been perfected in this Court. Mootness, in my view, is a question which, under these circumstances, this Court has the responsibility to decide. The facts relevant to this issue are undisputed. The District Court is in no better position to resolve the issue of mootness than we. No legitimate purpose is served by asking it to determine a question which is properly before us and which a long line of unbroken precedents would have us decide.[1] Moreover, if the case is moot, as I believe, there is no need for a further time-consuming hearing below and a possible future sec-

---

[4] To hold as I think the Court should on these issues would not in any way impair the federal courts' ability to prevent frustration of their reapportionment decrees.

[1] See, e. g., San Mateo County v. Southern Pac. R. Co., 116 U. S. 138; United States v. Alaska S. S. Co., 253 U. S. 113; Bus Employees v. Wisconsin Board, 340 U. S. 416; Oil Workers Unions v. Missouri, 361 U. S. 363, and the numerous cases cited at 368, n. 7 therein.

ond appeal to this Court. Surely both the District Court and this Court have enough to do without this Court creating unnecessary work for both. I would simply vacate the injunction order and dismiss this appeal as moot.

That this case is in fact moot becomes apparent from a consideration of the history of this litigation.

The appeal calls into question the validity of portions of an injunction issued by a three-judge District Court involving the reapportionment of the Georgia House of Representatives. The District Court entered an order on June 30, 1964, holding that the Georgia House of Representatives was unconstitutionally apportioned under the Federal Constitution and declaring invalid state constitutional and statutory apportionment provisions. The court's order allowed the November 1964 elections for the House of Representatives to take place under the then-existing constitutional and statutory provisions, but it required that new elections be held in 1965 in time for a properly apportioned legislature to take office no later than "the second Monday in January, 1966." Paragraph (2) of the court's order further enjoined appellants, state election officials, from placing on the November 1964 election ballot a new state constitution proposed by the then-existing unconstitutionally apportioned legislature, and it also enjoined the submission of a wholly new constitution to the voters by the legislature "at any subsequent election until the [legislature] . . . is reapportioned in accordance with constitutional standards." Paragraph (3) of the District Court's order limited the power of the 1965 legislature to enacting "such legislation as shall properly come before [it] . . . during the regular 1965 45-day session." Appellants' motion for a stay of the District Court's order was denied by MR. JUSTICE BLACK on July 6, 1964.[2]

---

[2] The District Court's order of June 30, 1964, is printed as Appendix A.

Appellants appealed to this Court. In their jurisdictional statement they did not contest the basic holding that the House of Representatives was unconstitutionally apportioned. They challenged the validity of portions of paragraphs (2) and (3) of the District Court's order.[3] Appellees moved to affirm on the ground that the order was in all respects valid. We noted probable jurisdiction, 379 U. S. 809, and granted appellants' motion to advance the cause for oral argument.

Shortly prior to argument, appellees moved that this appeal be dismissed because events supervening since the entry of the District Court's order rendered this appeal moot. Appellants opposed this motion. Consideration of appellees' motion to dismiss was postponed until the hearing.

Upon argument of this case it appeared without dispute that, since the entry of the order below, the parties had agreed upon modifications which eliminated appellants' objections to paragraph (3) of the District Court's order and that the District Court, on November 3, 1964, had entered an order embodying the agreed-upon modifications.[4] It likewise was agreed at the argument that the new constitution proposed by the legislature was not submitted to the voters in November 1964 and that under Georgia law it has lapsed and cannot be resubmitted. Thus the only issue remaining in this case is the validity of that portion of the District Court's order which prevents the newly elected or any future unconstitutionally

---

[3] Appellants interpreted paragraph (3) of the order to mean that the 1965 legislature could only deal with what was legally considered to be "legislation." They feared that the legislature would be unable to conduct investigations, vote pardons, or perform other similar duties. They also were concerned that under the terms of the District Court's order the 1965 legislature might be unable to meet in special session if such a session proved necessary.

[4] This order is printed here as Appendix B.

apportioned legislature from proposing and submitting to the voters a wholly new state constitution.

Appellees in their motion to dismiss and at the argument stated that although they originally sought affirmance of the portion of the District Court's order now under consideration, they no longer do so because, due to supervening events, it is now "highly speculative" as to whether the newly elected legislature [5] or any future unconstitutionally apportioned legislature will ever submit another wholly new constitution to the voters. Appellees state that consequently they no longer need the protection given them by the District Court's prohibition of such a submission, and that "this appeal presents only an abstract, hypothetical controversy in which the 'lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity' is lacking." [6]. They suggest that for these reasons controversy over this portion of the order has now become moot and urge that the appeal be dismissed and that this portion of the order be vacated. Appellants

---

[5] Appellees pointed out at the argument that in the new legislature which will meet in 1965, 20 of the 54 Senators and 67 of the 205 Representatives will have been newly elected at the November 1964 election.

[6] In their Motion to Dismiss at p. 5, appellees state:

"Before the proposed new constitution can be placed on the ballot for ratification in any future general election, it must again be submitted to the General Assembly and passed by an affirmative two-thirds vote of both houses. This Court has repeatedly admonished that 'constitutional questions are not to be dealt with abstractly.' The mere possibility that a similar constitutional proposal may be passed by the General Assembly at some future time is an insufficient basis for invoking the awesome responsibility of constitutional adjudication by this Court. Without further legislative action, this appeal presents only an abstract, hypothetical controversy in which the 'lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity' is lacking." (Citations omitted.)

resist the motion to dismiss on grounds of mootness. They contend that this Court should reach the merits and reverse the basic determination of the District Court that under the Federal Constitution a malapportioned legislature is without power to propose a new constitution to the voters.[7] They argue that a decision on the merits is called for because the issuance of the prior opinion of the District Court granting the injunction will have a precedential and deterrent effect, notwithstanding the vacation of the injunction order.

As this history shows, the appeal, in its present posture, is plainly moot under long-established principles and precedents. The question appellants would have us decide is one of grave import involving the power under the Federal Constitution of a malapportioned legislature to submit a state constitution to a popular vote—a question which necessarily involves a consideration of the varying systems used in different States for proposing constitutional amendments. The doctrine of "mootness," like the related doctrine of "ripeness," has been evolved by this Court so that it will not have to pass upon this type of question except upon the urging of one who is harmed or is currently threatened with harm caused by the allegedly unconstitutional action. See *Stearns* v. *Wood*, 236 U. S. 75. While this Court cannot and will not avoid its constitutional responsibility to decide apportionment cases arising when justiciable problems are presented and pressed for decision by litigants

---

[7] This portion of the District Court's order also rested upon a determination that under Georgia law the legislature could not submit to the voters a wholly new constitution in the form of an amendment to the existing constitution. Questions are raised as to the correctness of this determination and the propriety of the District Court's having made it. See *Louisiana Power & Light Co.* v. *Thibodaux*, 360 U. S. 25. In light of my resolution of this case, I would not reach these questions.

claiming an abridgment of their constitutional rights,[8] it should not, in apportionment cases, as in other areas, decide moot issues, volunteer judgments or seek out questions which have ceased to be ripe for adjudication [9] and are no longer presented in the context of an actual pending controversy.[10] I strongly, albeit respectfully, disagree with my Brother HARLAN's intimation, grounded on his basic view that the Court should never have entered into reapportionment matters at all, that now that it has been decided that such issues are justiciable, this Court should be more willing in this "sensitive" area than in other areas, to give opinions of an advisory nature, so that "the lower courts [will] at least be launched in the right general direction and not allowed to range so far afield." Opinion of MR. JUSTICE HARLAN, *ante,* p. 625. Moreover, it has already been demonstrated, as was easily predictable from the history of other constitutional issues of a "sensitive" nature, that there is in this area ample opportunity to guide the lower courts within the traditional bounds of concrete, live controversies, actively pressed by real adverse parties. See *Fortson* v. *Dorsey, ante,* p. 433; *Scranton* v. *Drew, ante,* p. 40.

This Court does not pass upon constitutional questions unless it is necessary to do so to preserve the rights of the parties. See *Liverpool, N. Y. & P. S. S. Co.* v. *Commissioners,* 113 U. S. 33, 39; *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 341, 345–348 (concurring opinion of Mr. Justice Brandeis); *Coffman* v. *Breeze Corps.,* 323 U. S. 316, 325. Nor does it decide abstract questions merely because of the effect such judgments might have

---

[8] See *Baker* v. *Carr,* 369 U. S. 186; *Reynolds* v. *Sims,* 377 U. S. 533, and companion cases.

[9] See *United States* v. *Alaska S. S. Co.,* 253 U. S. 113.

[10] See *San Mateo County* v. *Southern Pac. R. Co.,* 116 U. S. 138; *Mills* v. *Green,* 159 U. S. 651; *Jones* v. *Montague,* 194 U. S. 147; *Harris* v. *Battle,* 348 U. S. 803.

upon future actions in similar circumstances. *Little v. Bowers*, 134 U. S. 547, 558; *California v. San Pablo & T. R. Co.,* 149 U. S. 308, 314; *Kimball v. Kimball*, 174 U. S. 158. In the present case we are told by the proponents of the injunction that there exists only a remote possibility that the newly elected legislature or some future one will submit a wholly new constitution to the voters. Cf. *Bus Employees v. Missouri*, 374 U. S. 74, 78. If the question of the legislature's power to propose such a constitution were being submitted to a court as an initial matter, the speculativeness of the legislature's future conduct would undoubtedly render this issue unripe for adjudication. See *New Jersey v. Sargent,* 269 U. S. 328; *Arizona v. California*, 283 U. S. 423; *Electric Bond & Share Co. v. SEC*, 303 U. S. 419, 443; *Alabama State Federation of Labor v. McAdory*, 325 U. S. 450, 471; *United States v. Harriss*, 347 U. S. 612. The speculativeness, which has arisen in this case since the order was entered, makes the issue in this appeal, in my view, similarly unsuitable for adjudication. *United States v. Alaska S. S. Co.*, 253 U. S. 113.

The appellees themselves, in whose favor the judgment below has run, do not assert the need for the protection of the District Court's order against future submission of a new constitution; they deem the possibility of such a submission too remote. They therefore are agreeable to the vacation of the injunction which they sought and obtained. This obviously will relieve appellants of any burden which the injunction imposes upon them. It also will remove any precedential effect of the opinion of the District Court on this issue. *United States v. Munsingwear*, 340 U. S. 36, 39–41; Note, 103 U. Pa. L. Rev. 772, 794. Appellants would have the injunction reversed on the merits as improperly issued rather than vacated as appellees desire. Although there is this difference as to the proper disposition of this case, the net

result is that no party wishes the injunction to remain in effect. In the present posture of the case, the conclusion which emerges is that although the parties differ with respect to the abstract legal question of the validity of the order, there is no longer present here that "real, earnest and vital controversy between individuals" which assures us that a cause is in a "real sense adversary." [11] *Chicago & Grand Trunk R. Co. v. Wellman,* 143 U. S. 339, 345; *United States v. Johnson,* 319 U. S. 302, 305. Appellants' argument that the order, though vacated, will have an inhibitory effect upon the legislature's activity is but a way of saying that appellants desire to know for their own purposes, as a guide to future conduct, what this Court would have said on the merits, had the issue remained embedded in a real and substantial controversy. Without such a controversy currently existing between those who appear as adverse parties, this Court should not give an opinion upon questions of law "which a party desires to know for . . . his own purposes." [12] *Cleveland v. Chamberlain,* 1 Black 419, 426; see *Woodpaper Co. v. Heft,* 8 Wall. 333; *South Spring Hill Gold*

[11] Since their motion to dismiss was reserved until the hearing, appellees have conscientiously argued the merits. However, we cannot ignore the basic fact that they are not pressing for a decision on the merits since they believe they no longer need the protection of the injunction.

[12] That appellants' argument does not show that this Court should reach the merits here is further demonstrated by the fact that any inhibitory effect produced by the District Court's injunction at issue here would also be produced by that part of the injunction prohibiting submission of a new constitution only at the 1964 election. Yet appellants concede, as they must, that this Court would not now review that part of the injunction concerned only with the November 1964 election which has already taken place since the new constitution was not submitted to the voters in November 1964 and under Georgia law it has lapsed and cannot be resubmitted. See *Mills v. Green, supra.*

*Mining Co.* v. *Amador Medean Gold Mining Co.,* 145 U. S. 300.

The situation in this case is a far cry from that presented in *Bus Employees* v. *Missouri, supra,* where an "existing unresolved dispute" made the likelihood of repetition of the conduct in question much greater than the mere "speculative" possibility existing here. *Id.,* at 78. Nor do other decisions [13] relied upon by appellants support their position. In none of these cases was there any assertion, as here, by the party for whose benefit the injunction order was issued, that it had become highly problematical that the conduct which underlay the controversy would be repeated. In *Federal Trade Comm'n* v. *Goodyear Tire & Rubber Co.,* 304 U. S. 257; *J. I. Case Co.* v. *Labor Board,* 321 U. S. 332, relied upon by appellants, the party supporting the validity of the order called into question contended that the order was necessary and its validity should be reviewed. In the instant case whether or not the legislature, while still malapportioned, will submit a wholly new constitution to the voters is highly problematical, and the parties supporting the correctness of the injunction themselves feel that it should be vacated since they see no threat that the legislature will repeat conduct they consider illegal. The case is, therefore, much more closely analogous to *United States* v. *Alaska S. S. Co., supra,* in which this Court refused to review the question of the power of the Interstate Commerce Commission to require carriers to comply with an ICC order prescribing certain bills of lading. A three-judge District Court had found the Commission had no such power and had enjoined the Commission from ever issuing such an order. Before argument in this Court,

---

[13] *Southern Pacific Terminal Co.* v. *ICC,* 219 U. S. 498; *Federal Trade Comm'n* v. *Goodyear Tire & Rubber Co.,* 304 U. S. 257; *J. I. Case Co.* v. *Labor Board,* 321 U. S. 332.

however, it became clear that provisions in the bills of lading prescribed by the Commission conflicted with provisions contained in new legislation passed by Congress after the District Court's decision. Since the particular bills of lading prescribed would have to be withdrawn by the Commission in view of this legislation, and because of the uncertainty as to whether the Commission would prescribe new bills of lading or the form they would take, this Court refused to decide the issue of whether the Commission had the power to prescribe any bills of lading. The Court stated, "However convenient it might be to have decided the question of the power of the Commission to require the carriers to comply with an order prescribing bills of lading, this court 'is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.' " 253 U. S., at 116. The Court reversed the District Court's order and remanded the case to the District Court "with directions to dismiss the petition . . . without prejudice to the right of the complainants to assail in the future any order of the Commission prescribing bills of lading after the enactment of the new legislation." *Id.*, at 116–117. Unless *Alaska S. S. Co.*, is to be overruled or ignored, the Court should act similarly here.

Finally, I find the Court's disposition of this case mystifying, for I cannot understand what the District Court is to do upon remand. Since the District Court's order has been vacated, no injunction will be in effect. Presumably the District Court will have before it two groups of parties, one group urging that no order be entered and the other group claiming that no order is necessary because the likelihood of the legislature's resubmitting a new constitution is too remote. It is inconceivable to me that the District Court would be warranted in rein-

stating its injunction under the present facts. Of course, if circumstances changed, and there was a real, rather than a tenuous threat of further legislative action of the type originally complained of, the District Court, which has retained jurisdiction of this case, would be empowered to entertain an application for appropriate injunctive relief. However, I cannot understand the logic of the Court's decision in asking the District Court now to make a determination which, under the present circumstances, is rightfully our responsibility.

My Brother HARLAN suggests that, contrary to my view, "the Court does not remand the case to the District Court for a determination on the issue of mootness, but only to decide whether any injunctive relief is now appropriate in light of what has transpired since such relief was first granted." *Ante,* p. 624. But with due respect, I suggest that his interpretation of the Court's opinion is not justified by what the Court says or does. The Court explicitly sets forth appellees' contention that the case is moot because "[t]he situation has changed somewhat since the 1964 election," and "it is now highly speculative as to what the 1965 legislature will do" (*ante,* p. 622), and then the Court remands the case for reconsideration of the desirability of and need for the injunction in terms of the contentions raised by appellees, *i. e.,* "in light of the results of the 1964 election and the representations of appellees." *Ibid.* This surely must mean that the Court is asking the District Court to consider appellees' contentions that the case is moot. Further, I might better understand my Brother HARLAN's general distinction between determining whether a case is moot and whether an injunction is still appropriate if there were some issue in this case other than the power of the District Court to issue the injunction. But the only issue presented for decision on the merits is whether the District Court validly issued this type of injunction; thus to decide here

whether, in light of the changed circumstances and the parties' present desires, continuance of the injunction is still appropriate is to decide the identical question as to whether, in light of these changed circumstances and the present contentions of the parties, the case has become moot. Determining the issue of mootness and deciding "whether any injunctive relief is now appropriate in light of what has transpired since such relief was first granted," both come down to the same thing—the question is whether, at this juncture, as appellees contend, "this appeal presents only an abstract, hypothetical controversy in which the 'lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity' is lacking." The question is one for this Court to decide.

I believe that the proper result in this case would be to sustain the appellees' motion to dismiss for mootness and to enter an order vacating paragraph (2) of the District Court's order of June 30, 1964, prohibiting submission of a wholly new constitution to the voters by the legislature at the 1964 election or "at any subsequent election until [it] . . . is reapportioned in accordance with constitutional standards." Thus this portion of the slate would be wiped clean, *United States* v. *Munsingwear, supra,* without any necessity for further proceedings below to try the mootness issue. In view of the parties' stipulations before this Court that they accept the modifications entered by the District Court on November 3, 1964, I believe that the Court is correct in not passing upon the validity of paragraph (3) of the District Court's order of June 30, 1964—that portion of the order which appellants took as limiting the powers of the 1965 legislature. However, because of doubts expressed as to the jurisdiction of the District Court to enter its modified order while appeal is pending in this Court, see *Schempp* v. *School District,* 184 F. Supp. 381 (D. C. E. D. Pa.), the Court

ought also to vacate paragraph (3) of the June 30, 1964, order on the assumption that the District Court will re-enter its modified order of November 3, 1964, in accordance with the agreement of the parties.

The federal district courts have enough to do in deciding ripe reapportionment cases without our requiring them to decide stale ones.

## APPENDIX A TO OPINION OF MR. JUSTICE GOLDBERG, DISSENTING.

FINAL ORDER OF THE COURT OF JUNE 30, 1964.

Revised Order.

All parties having consented thereto, the order of the Court dated June 24, 1964, is hereby revised to read as follows:

It is now Ordered, Adjudged and Decreed as follows:

(1) Article III, Section III, Paragraph I (Code Section 2–1501) of the Constitution of Georgia of 1945, is hereby declared to be null, void and inoperative, as being in conflict with the Fourteenth Amendment to the Constitution of the United States.

Section 47–101 of the Code of Georgia, as amended, is hereby declared to be prospectively null, void and inoperative, as being in conflict with the Fourteenth Amendment to the Constitution of the United States, for elections to the House of Representatives after the General Election to be held in November of 1964.

(2) The defendants are hereby enjoined from placing on the ballot to be used in the General Election to be held on November 3, 1964, or at any subsequent election until the General Assembly is reapportioned in accordance with constitutional standards, the question whether a constitutional amendment purporting to amend the present state constitution by substituting an entirely new

constitution therefor shall be adopted; provided, however, nothing in this order shall prevent the submission of amendments to the Constitution of the State of Georgia which are separate as to subject matter, in accordance with Article XIII, Section I, Article 1, of the Constitution of the State of Georgia, 1945. (See *Hammond* v. *Clarke,* 136 Ga. 313, for a discussion by the Georgia Supreme Court of what constitutes separate amendments). Nor shall anything in this order prevent the calling by the General Assembly of a "convention of the people to revise, amend or change the constitution" if the representation "in the convention is based on population as near as practicable" with the members being elected by the people (see Article XIII, Section I, Article 2). Constitution of the State of Georgia, 1945.

(3) The motion of the plaintiffs for further injunctive relief prior to the conduct of the party primaries or conventions and the General Election of November 3, 1964, is hereby denied at this time, provided, however, that notwithstanding anything in Article III, Section IV, Paragraph I (Code Section 2–1601) of the Constitution of Georgia of 1945 to the contrary, the service of the members of the House of Representatives of the General Assembly of the State of Georgia to be elected at the General Election in November, 1964, shall be limited to the enactment of such legislation as shall properly come before the said Legislature during the regular 1965 45-day session, as provided in the Georgia Constitution, including such legislation as may be necessary for the General Assembly to be reapportioned in accordance with constitutional requirements and as may be necessary to permit the holding of elections to the newly constituted General Assembly, said elections to be held at such times as may be necessary to permit the Members of such General Assembly to take office as soon as practicable, but in no event later than the second Monday in January, 1966.

## APPENDIX B TO OPINION OF MR. JUSTICE GOLDBERG, DISSENTING.

ORDER OF THE DISTRICT COURT OF NOVEMBER 3, 1964.

Both parties agree that the motion for alternative relief should be granted. Therefore, paragraph 3 of the order of June 30, 1964, is hereby stricken and the following paragraph 3 is substituted in lieu thereof:

"(3) The motion of the plaintiffs for further injunctive relief prior to the conduct of the party primaries or conventions and the General Election of November 3, 1964, is hereby denied at this time, provided, however, that, notwithstanding anything in Article III, Section IV, Paragraph I (Code Section 2–1601) of the Constitution of Georgia of 1945 to the contrary, the service of the members of the House of Representatives of the General Assembly of the State of Georgia to be elected at the General Election in November, 1964, shall be limited to a term of one year's duration and provided further that the plaintiffs shall have the right to reapply to this Court for further relief should the General Assembly, which convenes in January, 1965, fail to enact, during the regular 1965 45-day session, as provided in the Georgia Constitution, such legislation as may be necessary for the General Assembly to be reapportioned in accordance with Constitutional requirements and as may be necessary to permit the holding of elections to the newly constituted General Assembly during the calendar year 1965, which elections are to be held at such time as may be necessary to permit the members of such newly constituted General Assembly to take office no later than the second Monday in January, 1966. To the extent that state statutory and constitutional provisions might otherwise conflict with such legislative reapportionment, they are hereby declared to be void and of no effect."

This 3rd day of November, 1964.