**Harrison MANN et al.**
**v.**
**Levin Nock DAVIS et al.**
**Civ. A. No. 2604.**

United States District Court
E. D. Virginia,
at Alexandria.

Argued March 10, 1965.
Decided April 9, 1965.

Judgment Affirmed Oct. 25, 1965.
See 86 S.Ct. 181.

Edmund D. Campbell, Arlington, Va., and E. A. Prichard, Fairfax, Va., for plaintiffs, Harrison Mann et al.

Aubrey R. Bowles, Jr., and L. Paul Byrne, Richmond, Va., for Henrico plaintiff intervenors, Simeon A. Burnette et al.

Henry L. Marsh, III, and S. W. Tucker, Richmond, Va., for Richmond plaintiff intervenors, William S. Thornton et al.

Kermit L. Racey and Richard S. Wright, Jr., Woodstock, Va., for Shenandoah plaintiff intervenors, Jesse D. Funkhouser et al.

Henry E. Howell, Jr., Sidney H. Kelsey and Leonard B. Sachs, Norfolk, Va., for plaintiff intervenors, Charles L. Glanville et al.

R. D. McIlwaine, III, Asst. Atty. Gen. of Virginia and Robert Y. Button, Atty. Gen. of Virginia, Richmond, Va., for defendants Levin Nock Davis et al.

Henry T. Wickham and David J. Mays, Richmond, Va., special counsel for all defendants.

H. Ratcliffe Turner, Commonwealth's Atty., Henrico County, Richmond, Va., for defendants Helen D. Clevenger et al.

T. Gray Haddon, Commonwealth's Atty., City of Richmond, Richmond, Va., for defendants Thomas R. Miller et al.

William J. Hassan, Commonwealth's Atty., Arlington County, Arlington, Va., for defendants H. Bruce Green et al.

Ralph G. Louk, Commonwealth's Atty., Fairfax County, and Quin S. Elson, Fairfax, Va., for defendants Thomas P. Chapman, Jr., et al.

Alfred W. Whitehurst, Commonwealth's Atty., City of Norfolk, Norfolk, Va., for defendants William L. Prieur, Jr., et al.

Before BRYAN, Circuit Judge, and LEWIS and HOFFMAN, District Judges.

ALBERT V. BRYAN, Circuit Judge.

Virginia's 1964 reapportionment of the State into districts for the election of delegates and senators in her General Assembly, following our invalidation of the 1962 redistricting,[1] is here attacked as denying Fourteenth Amendment equal protection of the laws. The assault is made in three separate intervening petitions in the original action, each dealing with a local problem, by certain citizens of Henrico County, the City of Richmond and Shenandoah County. We think only Shenandoah can prevail.

### Henrico County

The grievance asserted by these intervenors is that Henrico County and Richmond were placed in a single district, No. 36, for representation in the House of Delegates, rather than each made an independent district. Combined, these two political subdivisions were given 8 delegates, but Henrico pleads for 3 delegates of its own, leaving the remaining 5 to Richmond. The injury from the consolidation, according to the county, is that as Richmond has a voting power greater than Henrico, the city will be able to elect all 8 delegates and Henrico will have no representation by its own citizens.

This result, says Henrico, is due to a general disregard by the General Assembly of the guide lines and ground rules thus far enunciated for legislative apportionment by the Supreme Court. E. g. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821 (1963); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 598, 13 L.Ed. 2d 527 (1965). Our examination of the record discloses no such trespasses or fouls. To demonstrate the correctness of this conclusion, we review the 1964 reapportionment (the Act), touching particularly upon the features on which Henrico founds its accusations.

Ideal representation in the House of Delegates, when Virginia's total popula-

---

1. Mann v. Davis, 213 F.Supp. 577 (1962), affirmed sub nom. Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964). By order entered September 18, 1964 this court restored its injunction which had been suspended during the appeal. Thereupon the Legislature adopted a new apportionment in December, 1964. The statute relating to the State Senate appears as Chapter 1, and the enactment relating to the House of Delegates as Chapter 2, of the Acts of Assembly, Extra Session 1964.

tion according to the 1960 census is distributed among its 100 delegates, is 39,669 persons for each member. Richmond had a population of 219,958, Henrico 117,339. Applying these figures, it appears that Henrico would be entitled to 2 delegates and wanting but 3,668 residents for a third. Richmond alone could justify 5 delegates, with 21,613 towards a sixth. To have awarded only 5 delegates to Richmond would have meant that each of its delegates represented 43,911, or 4,242 persons in excess of the norm. With Henrico not quite earning 3 delegates, but Richmond due more than 5, the solution of the Virginia Assembly was to give the two areas 8 delegates jointly. There would then be 42,164 persons per delegate, a representation fairly nearing the par of 39,669.

A multi-member district, though linking more than one political subdivision, is not Constitutionally impermissible. Fortson v. Dorsey, supra, 379 U.S. 433, 85 S.Ct. 598 (1965). A multi-county or a county-city district is also legal. Id. But the possibility that a delegate or delegates may be chosen from one part of a district—whether a multi-county or a county-city district— rather than from another exposes no defect in the allotment. Id. In passing, it is at least noteworthy that Henrico made no objection in 1962 when the reapportionment act gave Henrico 1 delegate and then assigned 8 delegates jointly to Richmond and Henrico. While this distribution was in effect in 1963, we are told that a number of the 8 winning candidates, although resident in Richmond, received more votes in Henrico than did the candidates from that county. This would seem to refute somewhat Henrico's insistence that its citizens prefer to have their delegates come from Henrico.

The multi-member policy here does not have the "undesirable features" mooted in Lucas v. Forty-Fourth General Assembly of Colorado, supra, 377 U.S. 713, 731 with footnote 21, 84 S.Ct. 1459 (1964). The unification does not constitute so spacious or "populous" a territory as to demand the establishment of "identi-fiable constituencies". Indeed, Henrico now pledges its willingness to have 3 delegates elected at large from among its whole population of 117,339 and without a smaller constituency than its entire area.

The effect of the Act has not been to obliterate the traditional integrity in Virginia of city and county lines. The custom was sanctioned in Davis v. Mann, supra, 377 U.S. 678, 686, 84 S.Ct. 1441 (1964). The individuality of Henrico and Richmond is observed by the design of a separate senatorial district for each. We see no inconsistency in allocating senators on a different basis from delegates. Such a variation has been authoritatively approved, when, as presently, it may tend to "balance off minor inequities". Reynolds v. Sims, supra, 377 U.S. 533, 577, 579, 84 S.Ct. 1362 (1964).

Physical factors could reliably have directed the judgment of the General Assembly in determinng upon the union of Richmond and Henrico. They form a compact and contiguous territory. If they may not agree politically, concededly their interests are interknit and common in many aspects. The county is the residence of hundreds of business, professional and otherwise occupied persons plying their callings in the city. In fact, while the two are distinct governmental units, the courthouse of the county is situate well within the city's corporate limits. At all events, the Act does not in any degree devalue the vote in either Richmond or Henrico below the Constitutional standard of weight and fineness, "one person, one vote".

### City of Richmond

Certain Richmond Negro residents question the fusion of the city and Henrico County for the election of delegates on the ground that it deprives Negro citizens of a chance to elect one of their race to the General Assembly. They point out that the population of Richmond consists of 92,331 non-white and 127,627 white persons; that in Henrico the non-white residents number 6,070, the white 111,269; and that the poten-

tial vote of Negroes in Richmond is, by the coadunation, reduced from 42% (the percentage of non-white in Richmond) to 29% (the percentage of non-whites in the aggregate population of the city and Henrico).

Further, they suggest that the Negro communities in Richmond are so located that any division of the city into 5 fairly equal segments, each embracing a sufficient number of inhabitants for a delegate, would create 1 or more districts in which Negroes would be the majority. Additionally, they say that if the city were divided into 2 substantially equal districts with the allotment of 1 of Richmond's 2 senators to each district, the colored population in at least 1 might elect a senator.

Consequently, these intervenors suggest that Richmond be assigned 5 delegates apart from Henrico, and that the 5 be distributed, 1 to a district, among 5 substantially equal districts. Likewise, they ask that the city be fairly split into 2 senatorial districts. These contentions are underbraced by advertence to the Virginia constitutional injunction that legislators be elected by the voters of the several senatorial and house districts, and that apportionment of the *"State"* into such districts be made every ten years. §§ 41, 42 and 43. From this they conclude that these clauses command legislative allocation, both within and without city and county marches, by population and not according to existing governmental units. Omission of such delineations inside the city and state-wide, the intervenors aver, violates the Fourteenth and Fifteenth Amendments, as a deprivation of equal protection of the election laws and abridgement of the right to vote. We disagree.

To begin with, we reaffirm our earlier declaration of the validity of conjoining Richmond and Henrico. Moreover, as we have also shown, adherence to municipal boundaries in establishing legislative districts has been declared to be altogether free of legal infirmity. Furthermore, the racial exclusion decried in Gomillion

v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) and universally forbidden is not evident. Neither Richmond, nor any other city or county in Virginia has in her history ever been sub-districted. Even councilmen for the local government of Richmond are elected at large, and this without question by either race.

■ The concept of "one person, one vote", we understand, neither connotes nor envisages representation according to color. Certainly it does not demand an alignment of districts to assure success at the polls of any race. No line may be drawn to prefer by race or color.

As Justice Douglas, though in dissent but obviously undeniably, tartly put it in Wright v. Rockefeller, 376 U.S. 52, 62, 66, 84 S.Ct. 603, 609, 11 L.Ed.2d 512 (1964):

"The fact that Negro political leaders find advantage in this nearly solid Negro and Puerto Rican district is irrelevant to our problem. Rotten boroughs were long a curse of democratic processes. Racial boroughs are also at war with democratic standards."

Page 66, page 611 of 84 S.Ct.:

" * * * The principle of equality is at war with the notion that District A must be represented by a Negro, as it is with the notion that District B must represented by a Caucasian, District C by a Jew, District D by a Catholic, and so on. * * * Of course race, like religion, plays an important role in the choices which individual voters make from among various candidates. But government has no business designing electoral districts along racial or religious lines. * * *"

Previously Justice Douglas had said for the Court in Gray v. Sanders, supra, 372 U.S. 368, 380, 83 S.Ct. 801, 808 (1963):

" * * * The concept of political equality in the voting booth contained in the Fifteenth Amendment

extends to all phases of state elections, * * * and, as previously noted, there is no indication in the Constitution that homesite or occupation affords a permissible basis for distinguishing between qualified voters within the State."

### Shenandoah County

Certain citizens of Shenandoah County protest they have been deprived of Constitutional rights by the 1964 assignment of delegates in the 50th and 59th districts. The former, which has been assigned 1 delegate, comprises Page, Rockingham, Shenandoah Counties and the City of Harrisonburg. The 59th district encompasses only Rockingham County and Harrisonburg but it is also given 1 delegate. Harrisonburg is geographically within Rockingham County. Over-representation of Shenandoah County under the 1962 reapportionment was noted in Davis v. Mann, supra, 377 U.S. 678, 688, 84 S.Ct. 1441; it had "one seat in the Virginia House" although its population was 21,825 as compared to the "ideal ratio of one delegate for each 39,669 persons".

In 1964 Shenandoah's 21,825 people were leagued with Rockingham's 39,559, Page County's 15,572, and Harrisonburg's 12,842, increased to 13,804 by an annexation in 1962.[2] Obviously this readjustment erects a district of 90,760, far above the criterion of 39,669. Rockingham and Harrisonburg are saved from injustice by their additional delegate, but Shenandoah with Page suffers from a clear under-representation.

■ Invidious discrimination has thus been visited upon Shenandoah. With primary elections for the General Assembly scheduled for July of this year, and candidates' filing times therefor expiring in April, correction of this injury to Shenandoah County cannot await the convening of the General Assembly in 1966. Consequently, we are required to act to prevent the watering down of the Shenandoah votes. Until the General Assembly can rectify the inequity, we must set aside the 1964 apportionment of the 50th and 59th districts. In lieu of the present provision for them, the court will order that the counties of Page, Rockingham and Shenandoah and the City of Harrisonburg be assigned 2 delegates to represent all four of these political subdivisions jointly. This adjustment will effectuate a representation of 45,380 persons per delegate. While this is above the proper ratio, we do not deem it an unfair approach in the circumstances.

### Recapitulation

The record does not authorize attribution to the General Assembly of caprice or an unacceptable motive in the Henrico and Richmond reapportionment. To the contrary, a firm foundation may be seen for it. For Shenandoah County, however, the imbalance in representation is obvious and fatal.

An order will be entered dismissing the intervening complaints of Henrico and Richmond, but sustaining the claim of the Shenandoah intervenors, with the relief we have prescribed. The order will also express our approval of the Act insofar as such approval is required to remove any question or doubt of the validity of any legislation which has been, or may be, passed by the General Assembly since the adoption of the Act, our order of September 18, 1964 having required the General Assembly acting thereafter to make a Constitutionally valid reapportionment of the State before undertaking any other legislation.

2. These figures are taken from the face of the complaint of the Shenandoah Intervenors. The U.S. Bureau of Census' U.S. Census of Population: 1960. General Population Characteristics, Virginia.

Final Report PC(1)–48B, reveals Rockingham's population as 40,485 and Harrisonburg's as 11,916 rather than 12,842 prior to annexation.