Hillsborough,
No. 5403.

ALBERT LEVITT

*v.*

WILLIAM MAYNARD, *Attorney General & a.*

Argued December 7, 1965.
Decided January 31, 1966.

*Albert Levitt,* pro se and *Maurice M. Blodgett* ( *Mr. Levitt* orally ), for the plaintiff.

*William Maynard,* Attorney General, and *William J. O'Neil,* Assistant Attorney General, ( *Mr. O'Neil* orally ), for the defendants.

BLANDIN, J. The plaintiff in his brief states that the only question now before the court is whether the fact that the Congressman from the First District represents 331,818 persons and the one from the Second District a population of 275,103 constitutes "invidious discrimination" against the inhabitants of the First District. In support of his position, he relies substantially upon *Wesberry* v. *Sanders,* 376 U. S. 1, and certain lower Federal court cases, which will be hereinafter discussed.

In *Levitt* v. *Maynard,* 105 N. H. 447 ( decided July 16, 1964 ), we examined and rejected the plaintiff's argument in the light of the *Sanders* case and numerous other authorities which were fully considered in our opinion. While denying his petition for injunctive relief, we did, however, retain continuing jurisdiction of his petition for a declaratory judgment which, together with

a petition for injunctive relief, is again before us in the present proceeding.

The plaintiff now earnestly contends that since the Legislature failed to act on Congressional reapportionment during the 1965 session, it is the court's duty to take steps to secure the rights of voters. *Wesberry* v. *Sanders, supra*; U. S. Const., *Art.* I, *s.* 2, cl. 1; *s.* 4, cl. 1; Amendment XIV, *ss.* 1, 2; N. H. Const., Pt. I, *Art.* 11th. At the outset it must be observed that the decisive factor which governed our previous decision remains unchanged. This factor is the population difference between the two districts, based upon the 1960 Federal census, upon which all parties rely. This state, with a total population of 606,921, has but two Congressional Districts, the first containing 331,818 persons and the second 275,103. Thus the numerical difference is 56,715, and the Congressman from the First District represents 9.34 per cent more of the total population of the state than does the Congressman from the Second District. *Levitt* v. *Maynard, supra,* 449. Viewing the situation from the standpoint of the "maximum population-variance ratio" ( The Supreme Court Review ( 1964 ) *p.* 13, note 70 ) that is, the population ratio of the largest district to the smallest, we find, as stated in our former opinion, that the ratio of the First District to the Second is 1.2 to 1. Thus instead of one Congressman representing up to three times as many voters as are represented by a Congressman of another district in the state as was the case in *Wesberry* v. *Sanders, supra,* our Congressman from the First District represents only 1.2 times as many voters as does our Congressman from the Second District.

In *Toombs* v. *Fortson,* 241 F. Supp. 65 ( D.N.D. Ga. ), decided April 1, 1965, and relied upon by the plaintiff, the smallest district in the proposed plan for House reapportionment in Georgia had a population of 12,131, while the largest contained 23,860 persons, or almost double the number of the smallest. *Toombs* v. *Fortson, supra,* 70. Thus the population variance ratio of the largest district to the smallest was 1.9 to 1, as compared with the 1.2 to 1 ratio between our two districts. If it may be said, as the plaintiff urges, that the *Toombs* case stands for the proposition that such a variance ratio is unconstitutional, it is obvious that significant factual differences distinguish this holding from the situation before us. It should also be noted that in *Toombs* there had been an attempt at reapportionment and the Federal court was taking a second look. *Fortson* v. *Toombs,* 379 U. S. 621. The court nevertheless approved the

reapportionment as an interim plan until 1968, so that further reapportionment might be made. At the same time it reaffirmed (*p.* 70) the principle of *Reynolds* v. *Sims,* 377 U. S. 533, 577, that no rigid mathematical formula should be the test.

A further answer to the plaintiff's contention that the ratio of 1.2 to 1 is unconstitutional appears in the case of *Buckley* v. *Hoff,* 243 F. Supp. 873 ( D. Vt.), decided June 24, 1965. Here the court held unanimously that a 1.6 to 1 ratio between Senatorial Districts and 1.3 to 1 between House Districts in Vermont resulting from a reapportionment action taken by the Vermont Legislature offends no constitutional provision. See *Lucas* v. *Colorado General Assembly,* 377 U. S. 713, 727, 730, decided June 15, 1964, where the court said that a ratio of 1.7 to 1 was "arguably" constitutional.

In *Gong* v. *Bryant,* 230 F. Supp. 917, ( D.S.D. Fla.), decided May 11, 1964, the parties involved agreed that the Congressional Districts created by section 8.01 of the Florida Statutes F S A would, if continued, be unconstitutional under *Wesberry* v. *Sanders,* 376 U. S. 1. Here again the court denied injunctive relief against enforcement of the statute, while retaining jurisdiction to review the matter upon motion of any party after sixty days from the adjournment of the next session of the Florida Legislature. The population chart showed that the smallest district contained 237,235 persons and the largest 660,335, more than double the number in the smallest district. We believe that we need not labor the point further that this case, with its factual differences from the one before us, is not decisive of the present controversy.

The plaintiff states unequivocally that in *Calkins* v. *Hare,* 228 F. Supp. 824 ( D.E.D. Mich.) decided March 26, 1964, the court held that a variation from "equality" of 9.2 per cent was unconstitutional. An examination of the *Calkins* case compels us to differ from the plaintiff's analysis. The court there declined to measure constitutional rights in these terms. The 9.2 figure discussed in the opinion was the "average departure" from equality of all of the Congressional Districts. *Ib.,* 828. The court was passing on the figures resulting from a legislative reapportionment made in an attempt to satisfy the mandate of the Supreme Court as laid down in *Baker* v. *Carr,* 369 U. S. 186, and amplified in *Wesberry* v. *Sanders,* 376 U. S. 1. See also, *Reynolds* v. *Sims,* 377 U. S. 533, 554-555. The reapportionment in *Calkins* examined in detail did show gross disparities. For example, the Eleventh Congressional District after reap-

portionment had a population of 305,984, while the Fifteenth contained 494,068 persons. It thus appears that the Fifteenth had 188,084 or approximately 61 per cent more people than the Eleventh. This does not compare with the 56,715 or 20 per cent more people living in the First District than live in the Second District in New Hampshire. In view of these facts, we decline to accept the plaintiff's argument that the case stands for the proposition that the 9.34 per cent variation from equality between our districts is unconstitutional.

The conclusion is reached by the plaintiff that the variation from "norm" or average, of plus 9 per cent in the First District, and minus 9.34 per cent in the Second, constitutes an "actual numerical variance," or disparity, between the two districts "of 18.34 per cent." More accurately on terms of percentage of the average the latter figure is 18.68 per cent. We do not consider this to be of special significance.

Since we are concerned with only two districts, the "norm" or average is necessarily 303,460, or half the total population of the state. To say that the aggregate disparity between the two districts is 18.68 per cent of half the population is just another way of saying that it is 9.34 per cent of the total population, a proposition recognized at the outset of our consideration of the issues presented. *Levitt* v. *Maynard,* 105 N. H. 447, 449.

Other courts have undertaken to characterize variations between districts in terms of "departure" or variation above or below the average figure. In *Toombs* v. *Fortson,* 241 F. Supp. 65, *supra,* the court indicated that it would set no formula. See also, *Silver* v. *Brown,* ( Cal. ) 405 P. 2d 571; *Adams* v. *Brown,* ( Cal. ) 405 P. 2d 132. The Supreme Court, as previously noted, has declined to adopt any arbitrary standard. Thus in *Roman* v. *Sincook,* 377 U. S. 695, 710, it stated that its affirmance of the District Court's decision was "not meant to indicate approval of the District Court's attempt to state in mathematical language the constitutionally permissible bounds of discretion in deviating from apportionment according to population," where that court had suggested that a ratio smaller than 1.5 to 1 "would presumably comport with minimal constitutional requisites."

The recent cases called to our attention by the plaintiff, aside from those already discussed, including *Travia* v. *Lomenzo,* 382 U. S. 4, decided July 16, 1965, do not alter our views. Their guide lines appear in general the same as those laid down in the cases cited in *Levitt, supra,* and to preclude a rigid mathematical

formula as a test. *Reynolds* v. *Sims,* 377 U. S. 533, 577; *Toombs* v. *Fortson,* 241 F. Supp. 65, 70 ( D.N.D. Ga. ), decided April 1, 1965. As previously noted also such holdings as *Toombs* and others, are clearly distinguishable on their facts from the situation now presented to us.

We believe that what we have said disposes of the plaintiff's arguments that the existing provisions of RSA 63:4, 5 violate the express language of Part I, *Art.* 11th of the N. H. Constitution.

In summary, our answer to the single question posed by the plaintiff as to whether there exists an invidious discrimination between the inhabitants of the First Congressional District and the Second due to the difference in population between the two is No. We hold that the plaintiff has failed to show that the existing Congressional Districts so dilute or debase the vote of the residents of the First District or magnify or enhance the vote of the residents of the Second District as to constitute an invidious discrimination in violation of our Constitution, Part I, *Art.* 11th or the Constitution of the United States, Art. I, *s.* 2, clause 1, *s.* 4, clause 1 or Amendment XIV, *ss.* 1 and 2. *Wesberry* v. *Sanders,* 376 U. S. 1; *Maryland Committee* v. *Tawes,* 377 U. S. 656; *Reynolds* v. *Sims,* 377 U. S. 533; *Buckley* v. *Hoff,* 243 F. Supp. 873 ( D. Vt. ) decided June 24, 1965; *Levitt* v. *Maynard,* 105 N. H. 447. See *Calkins* v. *Hare,* 228 F. Supp. 824, 829 ( D.E.D. Mich. 1964 ).

We note that at its last session in 1965 our Legislature in the face of practical difficulties made significant progress in the over-all matter of reapportionment. By virtue of Laws 1965, *cc.* 216 and 220, the House and Senate apportionments respectively were brought in line with the U. S. Supreme Court pronouncements. Overwhelming approval given by both parties to the final passage of the legislation is evidence of the good faith and reasonableness which the members exercised in making a most delicate and difficult adjustment. See 63 Mich. L. Rev. 255, 258-259.

After consideration of the situation in its entirety, and with no indication of significant change in the comparative population of the two Congressional Districts, the order is

*Petition denied.*

All concurred.