Andrew **COOPER** et al., Plaintiffs,

v.

James M. **POWER**, Thomas Mallee, Maurice J. O'Rourke, and J. J. Duberstein, Commissioners of Election constituting the Board of Elections of the City of New York et al., Defendants.

No. 66 C 594.

United States District Court
E. D. New York.

Aug. 9, 1966.

Milton H. Friedman, of Friedman & Perlin, of counsel), for plaintiffs.

George Zuckerman, New York City (Louis J. Lefkowitz, Atty. Gen., and Barry Mahoney, New York City, of counsel), for defendant officers of New York State and Legislative officials.

J. Lee Rankin, Corp. Counsel of the City of New York, and Gene R. McHam, New York City, for defendant Board of Elections of the City of New York.

DOOLING, District Judge.

Plaintiffs Cooper and Bacchus, Negro enrolled members of the Democratic Party residing in the Tenth and Eleventh Congressional Districts in Brooklyn, and Paul S. Kerrigan, a white enrolled member of the Republican Party residing in

the Fourteenth Congressional District in Brooklyn, sue to invalidate New York State's apportionment of Congressional districts. Their charge is that the Tenth through the Sixteenth Congressional Districts have been so gerrymandered that they fractionate the Bedford-Stuyvesant community, a compact, contiguous and politically and economically homogeneous area populated predominantly by Negroes and Puerto Ricans, that they necessarily deprive the population of the Bedford-Stuyvesant community of political effectiveness in securing Congressional representation concerned with the interests and needs of the Bedford-Stuyvesant population, which is below average in income, jobs, housing and education and is above average in its dependence on public welfare, public medical and social services and anti-poverty programs. Plaintiffs disclaim any contention that the Bedford-Stuyvesant community, as they define it, should be erected into a single Congressional District, although it is alleged that its 1960 population is within the range of the 1960 populations of the 10th through the 16th Districts. The claims pressed embrace the contention that the State's provision of the purposefully and intricately eccentric boundaries of the 10th to the 16th Districts impose an invidiously discriminatory impairment of the electoral rights of the Negro and Puerto Rican inhabitants of the Bedford-Stuyvesant community in violation of Article I, Section 4 of the Constitution and the Fourteenth and Fifteenth Amendments. The statistical data alleged are given in Appendix A.

Plaintiffs have moved for a preliminary order restraining the conduct of any election for the House from any Congressional District wholly or partly in Brooklyn and for the designation under 28 U.S.C. § 2284 of two other judges for the hearing of the case. The Attorney General of the State of New York and the Corporation Counsel of the City of New York have moved to dismiss the action essentially on the ground that it does not present a substantial federal question warranting the convening of a three judge court nor any claim upon which relief can be granted or that is within the jurisdiction of the Court. The Corporation Counsel additionally moves for a dismissal as against the Board of Elections on the ground that its relation to the matter is ministerial only and unrelated to the delineation of Congressional Districts.

Assuming that the District Court, acting alone, can act on the basis that the federal claim advanced is wholly unsubstantial, (cf. Swift & Co., Inc. v. Wickham, 1965, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194; Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; California Water Service Co. v. City of Redding, 1938, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323), the present case is not one that can upon the face of the complaint be pronounced insubstantial. Wright v. Rockefeller, 1964, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512, involving cognate issues in a different perspective, is not dispositive; the Court accepted the factual finding that the apportionment Act had not been shown to be the product of a state contrivance to segregate on the basis of race or place of origin. Similarly, in Honeywood v. Rockefeller, E.D.N.Y.1963, 214 F.Supp. 897, aff'd 1964, 376 U.S. 222, 84 S.Ct. 708, 11 L.Ed.2d 656, the circumstances were found to negate "the inference of racial discrimination." Mann v. Davis, E.D.Va.1965, 245 F.Supp. 241, aff'd sub nom. Burnette v. Davis, 1965, 382 U.S. 42, 86 S.Ct. 181, 15 L.Ed. 2d 35, declining to find discrimination in the adding of predominantly white Henrico County to the City of Richmond for at-large voting, although it reduced the Negro population percentage from 42% to 29% of the whole district, equated the complaint with a plea for racial representation, which the Court viewed as not within the protection against calculated exclusion from the franchise based on race, as in Gomillion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.

2d 110. And in Kilgarlin v. Martin, S.D. Tex.1966, 252 F.Supp. 404, 434, raising a similar charge of racial gerrymandering, based on the use of multi-member voting districts only in urban areas where the Negro population was concentrated, the Court rejected the claim on its conclusion that (p. 435) "the record * * * does not contain a scintilla of probative evidence to substantiate plaintiffs' charges of racial gerrymandering." Sims v. Baggett, M.D.Ala.1965, 247 F.Supp. 96, 109, indicates that "Systematic and intentional dilution of Negro voting power by racial gerrymandering is just as discriminatory as complete disfranchisement or total segregation." Cf. Fortson v. Dorsey, 1965, 379 U.S. 433, 438–439, 85 S.Ct. 498, 501, 13 L.Ed.2d 401 (holding open the question whether a multi-member constituency scheme would pass constitutional muster if, "designedly or otherwise" it operated "to minimize or cancel out the voting strength of racial or political elements of the voting population."); Burns v. Richardson, 1966, 384 U.S. 73, 88, 86 S.Ct. 1286, 16 L.Ed.2d 376; Lucas v. Forty-fourth General Assembly of State of Colorado, 1964, 377 U.S. 713, 731, 84 S.Ct. 1459, 1471, 12 L.Ed.2d 632 (noting an arguable value in "identifiable constituencies *within* the populous counties" from which might be elected a legislator "specifically to represent" the residents of such areas); Jones v. Falcey, 1966, 48 N.J. 25, 222 A.2d 101.

It is concluded that the complaint presents a case requiring notification to the Chief Judge of this Circuit under 28 U.S.C. § 2284(1). Action on the motions is held in abeyance pending the formation of a district court of three judges under Section 2284.

### APPENDIX A

#### 1960 Population Distributions

| District | Total | Negroes and Puerto Ricans | Residents of Bedford-Stuyvesant in District | | |
| --- | --- | --- | --- | --- | --- |
| | | | Total | % | Negroes and Puerto Ricans |
| 10th | 424,417* | 158,019 | 178,804 | 42 | 140,046 |
| 11th | 403,628 | 132,390 | 59,984 | 15 | 50,035 |
| 12th | 469,908** | 78,942 | 105,421 | 23 | 67,736 |
| 13th | 454,285 | | | | |
| 14th | 465,889 | 154,615 | 61,579 | 13 | 36,376 |
| 15th | 349,850** | 21,796 | 29,130 | 8 | 13,031 |
| 16th | 352,024* | | | | |

*The 10th district included 70,891 Queens residents; the 16th included 221,941 Richmond residents.

**The 12th district is the most populous in the state, the 15th, the least populous.

*Note*: The 13th and 16th Districts do not run as far north as Bedford-Stuyvesant.