Peter J. RABINOWITZ et al.,
Plaintiffs-Appellants,

v.

BOARD OF JUNIOR COLLEGE DISTRICT NO. 508, COUNTY OF COOK, STATE OF ILLINOIS, a body politic and corporate, et al., Defendants-Appellees.

No. 74–1164.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 11, 1974.

Decided Dec. 23, 1974.

Rehearing Denied April 21, 1975.

Michael Krinsky, Victor Rabinowitz, New York City, Lance Haddix, Chicago, Ill., for plaintiffs-appellants.

George L. Siegel, Fred R. Kimmel, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, PELL, Circuit Judge, and BARNES, Senior Circuit Judge.*

* Senior Circuit Judge Stanley N. Barnes of the Ninth Circuit, sitting by designation.

BARNES, Senior Circuit Judge.

This is an appeal from the dismissal of plaintiffs' action without prejudice for mootness. (C.T. 22, 25–27). We reverse.

## I.

Plaintiffs are tenured faculty members of Southwest College who were ordered transferred to different public Junior Colleges pursuant to a resolution of defendant Board passed on July 3, 1973. Plaintiffs, on August 16, 1973 (alleging that the transfers (1) were in reprisal for plaintiffs' exercise of protected speech, (2) were made without giving adequate notice of the reason for the transfer, (3) were promulgated under an unduly vague and indefinite policy, and (4) denied plaintiffs a prior hearing commensurate with the demands of due process), brought this action seeking injunction and declaratory relief. The district court on September 11, 1973 issued a preliminary injunction; but before the case was heard on the merits, defendants entered into a new collective bargaining agreement with plaintiffs' union which placed a "freeze" on faculty transfers during the period of the agreement: *i. e.,* until June 30, 1975. On December 4, 1973 defendant Board, reciting the litigation herein and the collective bargaining agreement entered into, passed a resolution specifically revoking the transfer orders of July 3, 1973 affecting plaintiffs.

The district court then dismissed plaintiffs' action on December 20, 1973, reciting in a subsequent memorandum of February 6, 1974 that it did so for mootness in light of: (1) the agreement, and (2) the Board's resolution.

## II.

■ It is established doctrine that the voluntary cessation of the complained of action is not sufficient to moot litigation. It must appear with assurance "that 'there is no reasonable expectation that the wrong will be repeated,'" United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); Aurora Education

Ass'n v. Board of Education, etc., 490 F.2d 431, 435 (7th Cir. 1974); *cf.* DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 704, 40 L.Ed.2d 164 (1974). The defendants have the "heavy burden of persuasion," United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). Here the defendants have not sustained that heavy burden. There is indeed a reasonable expectation that the wrong alleged may be repeated. That expectation is not a mere "speculative contingenc[y]." *DeFunis, supra,* note 4.

The protections of the collective bargaining agreement which plaintiffs presently enjoy will terminate as of June 30, 1975, at which time plaintiffs may again become exposed to the threat of transfer. If, as plaintiffs allege, defendants' motivation behind the transfers in the instant case was to squelch plaintiffs' opposition and dissent to their policies, then it seems apparent that there is little or no assurance that defendants will not attempt the transfers against next July. Indeed, this case itself arises out of the second attempted transfer of plaintiff Kaufman. Defendants have not withdrawn or repudiated the rule under which they have acted.

The case is not moot.

Reversed and remanded.

PELL, Circuit Judge (dissenting).

Putting the matter quite simply, the majority opinion has revived a dead case which despite the purported resuscitation remains without sufficient breath of life to justify judicial attention. I, therefore, respectfully dissent.

The statement of the principle that the judiciary should not concern itself with moot questions, indeed would be exceeding the limitations of its authority under Article III of the Constitution, is not one of recent enunciation.

"The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes neces-

sary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard." California v. San Pablo and Tulare Railroad Company, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893).

The application, however, of this relatively simple statement of policy has not followed with the ease that might have reasonably been expected. Overriding policy considerations as well as genuine difficulties in diagnosis of the condition of health of the case have resulted in leaving the path to decision somewhat less than clear and certain. A recent case involving the availability of welfare benefits to employees on strike graphically illustrates the difficulties.

In Super Tire Engineering Company v. McCorkle, 469 F.2d 911 (3d Cir. 1972), the court had before it a challenge to the New Jersey welfare program on the basis that the payment of such benefits interfered with free collective bargaining. The strike had been settled and a divided court held the litigation was moot. This result was found improper by the Supreme Court, again on a divided basis, and the cause was remanded for proceedings on the merits. 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). While the Supreme Court rejected the determination of the Court of Appeals that the case was moot, the opinion of the lower court contains a particularly extensive survey and analysis of authorities which have sought to deal with this troublesome question. 469 F.2d at 914 et seq.

Inasmuch as the Supreme Court reversal was based upon the Court of Appeals' misapplication of the principles derivable from the cases surveyed rather than upon any misstatement thereof, the guidelines which the majority of the Court of Appeals found in Supreme Court cases appear to me to be proper ones for application to the appeal before this court.

"The problem of mootness presents a recurring refrain in several types of cases. Analysis of them reveals four concerns that the Supreme Court addresses in terms of mootness. They are: that some sort of judicial decree be possible, that the parties remain in a posture sufficiently adverse to insure effective litigation, that the issue in contention continue to be concrete, and that the issue not be one that will recur and yet be unreviewable." 469 F.2d at 915.

In the light of these guidelines I turn to an examination of the appeal before us. Both District Judge Will and a three-judge panel of the Illinois Appellate Court have held that there was no live controversy. I agree. The complaint basically was directed at the transfers of July 3, 1973. Injunctive relief was sought and Judge Will granted a preliminary injunction on the basis that "the Complaint and Affidavits filed in support thereof establish that there is a bona fide dispute between the parties which may affect the constitutional rights of the Plaintiffs." The dispute which was the basis of the preliminary injunction has been ended. The transfers have been cancelled and the faculty transfers in the absence of agreement have been frozen until June 30, 1975.

While the majority opinion in the present case does not differentiate between injunctive and declaratory relief, I cannot conceive that any controversy remains as to the former. Without further court order, the transfers at which the sought-for injunctive relief was pointed have now been nullified as fully as though the injunction prayed for had been granted. There does remain, however, the matter of declaratory relief and this issue in the appropriate case may avoid mootness. *Super Tire Engineering Company, supra,* 416 U.S. at 121, 94 S.Ct. 1694. However, the Supreme

Court in that case emphasized aspects which are conspicuously absent in the present case. There the Court observed that "the challenged governmental activity . . . is not contingent, has not evaporated or *disappeared,* and, by its *continuing* and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Id.* at 122, 94 S.Ct. at 1698. In the case before it, in distinguishing cases in which mootness was found to exist, the Court observed, that in those cases, "the recurrence of a seizure [was]˙ *so* remote and *speculative* that there was no *tangible prejudice* to the existing interests of the parties and, therefore, there was a 'want of a subject matter' on which any judgment of this Court could operate." *Id.* at 123, 94 S.Ct. at 1698. Further, the Court observed that in the case before it the challenged policy "is fixed and definite [and] not *contingent upon executive discretion." Id.* at 124, 94 S.Ct. at 1699. (Emphasis added.)

In the case we have before this court, while June 30, 1975, is not distantly remote, possibility of recurrence cannot be other than completely speculative. The trial court on remand will have to speculate that notwithstanding the rebuffs suffered by alleged attempts at disciplinary transfers resulting from union negotiations, arbitration, and preliminary injunction, the administration will once again in July 1975 attempt to transfer. Directing its attention to that point in time, the trial court will have to put aside the possibility that transfers may be based upon legitimate factors—the needs of other colleges, increased enrollment in other colleges, decreased enrollment in Southwest College, increased emphasis on certain curricular subjects elsewhere, decreased emphasis at Southwest, et cetera.

Passing these hurdles, the trial court will be confronted with the speculative determination that the plaintiffs have not taken employment elsewhere (one is now on leave of absence at his own request), that the identity of the college president will remain unchanged (plaintiffs argue that there has been a power struggle between plaintiffs and the president, a not unusual aspect of academic life), and that the union will either be unsuccessful or will abandon efforts to continue the freeze on transfers without agreement. In sum, the district court will have to attempt to lay down some due process guidelines based upon guessed-at factual possibilities rather than probabilities.

Returning to the guidelines from the majority opinion in the Court of Appeals in *Super Tire* quoted above: Presumably some sort of a judicial decree can be fashioned by an ingenious trial judge but it may or may not be responsive to that which would have developed if there had not been judicial action. There is no certainty whatsoever that the parties on either side will remain in a sufficiently adverse posture nor do I conceive that the litigation issue is any longer concrete. Finally, it seems crystal clear that if the administration should again undertake in July 1975 a transfer it will not only be reviewable but reviewed.

With all due respect to the majority opinion in the present case, I do not find the cited antitrust cases persuasive. The test for mootness in those cases is a stringent one and mere voluntary cessation of alleged illegal conduct does not moot the case leaving the defendant free to return to his old ways. United States v. Concentrated Phosphate Export Ass'n, Inc., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

Further, because of the speculative nature of the possibility that the alleged wrong may be repeated I am in complete disagreement with the majority's conclusion that there is here a reasonable expectation of recurrence. As a matter of fact, the appellants' argument of likelihood of recurrence, including apparently the reference to the prior attempted transfer of Kaufman, is found only in certain testimony allegedly taken from discovery depositions which are not a part of the record.

Notwithstanding the crowded conditions of court dockets, the judiciary should bend every reasonable effort to

afford full due process to every controversy. It is to be regretted, however, when the factors precipitating litigation have died that the speculative possibility of their rebirth should further increase the work load with which the courts are attempting to cope. I would let this case rest in peace.